IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JAMES JOHN BLEAU, ) | |
| ) | |
| Petitioner, ) | Case No. CV 05-042-S-MHW |
| ) | |
| v. ) | **MEMORANDUM DECISION** |
| ) | **AND ORDER** |
| TOM BEAUCLAIR, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

On March 19, 2007, the Court held an evidentiary hearing in this habeas corpus matter to allow the parties to present evidence related to whether the one-year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act (AEDPA) should be tolled.[1] The transcript of that hearing has been prepared and the parties have filed post-hearing briefing. Petitioner has also filed a motion to reopen the evidentiary hearing on a limited issue.

The parties have consented to the jurisdiction of a United States Magistrate Judge, in accordance with 28 U.S.C. § 636(d). (Docket No. 13.) For the reasons set forth more fully herein, the Court will grant Petitioner's motion to reopen the evidentiary hearing to the limited extent that his newly proffered evidence will be considered, but the Court concludes that the Petition is untimely and shall be dismissed.

---

[1] This case was consolidated with CV 05-242-S-MHW for the limited purpose of conducting the evidentiary hearing. (Docket No. 54.)

**MEMORANDUM DECISION AND ORDER - 1**

**MOTION TO REOPEN THE EVIDENTIARY HEARING**

Petitioner's counsel has requested that the Court reopen the evidentiary hearing in order to correct Petitioner's inaccurate claim under oath that he never received a federal habeas corpus self-help packet from prison paralegals.[2] Counsel indicates in an affidavit that Petitioner has since discovered a self-help packet in his legal materials that appears to have been sent to him in response to his March 2002 request. (Docket No. 68-1, p. 2.) Counsel brings this matter to the Court's attention in order to comply with his ethical duty to correct false testimony, and he further seeks to reopen the hearing and to submit the self-help packet as evidence. (Docket No. 68-1, p. 2; Exhibit A.) Respondent objects to these requests.

A federal court reviewing a habeas corpus petition has broad discretion in the manner in which it accepts and considers evidence. Under Rule 7 of the Rules Governing Section 2254 Cases (Habeas Rules), the court may expand the existing record with "additional materials relating to the petition," which may include, among other things, "letters predating the filing of the petition, documents, [or] exhibits," as long as the party against whom the material is offered has had an opportunity to admit or deny its correctness.

Here, Respondent does not appear to dispute that Petitioner actually received the self-help packet or that it is exactly like the packet admitted as State's Exhibit 1021 at the

---

[2] Counsel also moved the Court to suspend the briefing schedule. Because both parties have now filed their briefs, this aspect of the motion is moot.

**MEMORANDUM DECISION AND ORDER - 2**

evidentiary hearing (except that the cover pages are missing from State's Exhibit 1021). The proffered evidence clearly relates to the issues before the Court, and Respondent has offered no persuasive argument as to how he would be prejudiced if the Court were to consider this material. Indeed, part of Respondent's theory in this case is that the prison paralegals did, in fact, forward legal material when Petitioner requested it. Accordingly, Petitioner's motion will be granted in part, and the Court will consider counsel's proffer of Petitioner's testimony, to the extent that it is relevant, and shall expand the record under Habeas Rule 7 to include the self-help packet, attached to the affidavit as Exhibit A. Conversely, the Court sees no reason to reopen the evidentiary hearing to take live testimony, and that aspect of the motion shall be denied.

## FINDINGS OF FACT

After carefully considering the state court record, the evidence presented at the evidentiary hearing, the expanded record, and the parties' arguments, the Court makes the following findings of material fact.

1. After a jury trial in 1996, Petitioner was convicted of one count of aggravated assault and one count of exhibition of a deadly weapon. The judgment of conviction was entered on September 9, 1996. Petitioner did not file a direct appeal. (State's Lodging B-3.)

2. On December 12, 1996,[3] Petitioner filed a *pro se* motion for reduction of

---

[3] The Court has given Petitioner the benefit of the prison "mailbox rule," deeming his *pro se* filings to have been filed when they were signed and delivered to prison officials.

**MEMORANDUM DECISION AND ORDER - 3**

sentence under Idaho Criminal Rule 35, which was followed by his attorney's motion for modification of sentence. Both motions were denied February 20, 1997. (State's Lodgings B-4, B-5, B-6.)

3. Five months later, on July 17, 1997, Petitioner filed his first application for post-conviction relief in state district court. (State's Lodging C-2, p. 4.)

4. In February 1998, while the post-conviction matter was pending, the Idaho Department of Correction (IDOC) removed all law libraries from its prisons and replaced them with "legal resources centers" as part of a change in its access to courts policy. (Evidentiary Hearing ("EH") Tr., pp. 57-58.) These resource centers consist of selected books containing relevant statutes and rules of procedure, including the United States Code Annotated, in addition to a set of forms and self-help packets for inmates to fill out and submit to the courts. (EH Tr., pp. 57-58.)

5. Since 1998, prison paralegals have supervised the legal resource centers, but their services consist primarily of forwarding legal forms to inmates upon written request, making copies, notarizing documents, and mailing completed forms to the courts. (EH Tr., p. 60.) Paralegals are prohibited from giving legal advice to inmates. (EH Tr., pp. 60-61.) Legal advice includes deciding the choice of remedy, the appropriate form to use, representing an inmate, or making a referral for legal counsel. (EH Tr., pp. 60, 73.) It also includes advising an inmate on filing deadlines. (EH Tr., pp. 79, 109, 119.)

6. If an inmate wishes to access the resource center, he must submit a request form, which is then routed to the paralegal. On the form, the inmate can check whether

**MEMORANDUM DECISION AND ORDER - 4**

he needs a "form" or "packet," and whether he wishes to speak with a paralegal. The inmate can also check the type of action for which he needs the information. (State's EH Exhibit 1009.) Except in rare circumstances, and only when good cause exists, an inmate's request for legal material from the resource center will be granted. (EH Tr., p. 67.)

7. Petitioner was fully aware of the post-February 1998 IDOC access to courts policy, and he was a frequent user of the resource center and its materials throughout his incarceration in IDOC facilities. (EH Tr., pp. 11-12, 80.)

8. On December 31, 1998, Petitioner met with a paralegal and asked him for advice on "what to do after post-conviction." (State's Exhibit 1007, p. 2.) The paralegal informed him that he could not give legal advice.[4] (State's Exhibit 1007, p. 2.)

9. On January 5, 1999, the state district court issued its judgment dismissing Petitioner's first application for post-conviction relief. The Idaho Court of Appeals later affirmed the lower court, and the Idaho Supreme Court denied Petitioner's petition for review. The remittitur was issued on March 29, 2001. (State's Lodging C-2, p. 153; State's Lodgings D-14, D-15.)

10. Almost four months later, on July 18, 2001, Petitioner submitted a second application for post-conviction relief, which was summarily dismissed by the state district

---

[4] Petitioner testified at the evidentiary hearing that the paralegal then told him that he could not receive any federal legal material until he had first exhausted his state court remedies. (EH Tr., p. 12.) Though the Court is skeptical that this exchange occurred, it need not make a finding of fact on this issue because, as discussed in the Analysis section, it would not be material to the Court's ultimate conclusion that Petitioner did not file a timely federal petition.

**MEMORANDUM DECISION AND ORDER - 5**

court. (State's Lodging E-2, pp. 42, 56-58.) Petitioner appealed that decision.

11.     While the appeal was pending in state court, Petitioner filed a written request for state and federal habeas corpus self-help packets from the prison legal resource center, which he received on or about March 6, 2002. (State's Exhibit 1008; EH Tr., pp. 83-84; Docket No. 68, pp. 2-3.) This version of the federal packet stated that a prisoner "must exhaust state remedies prior to filing a Federal Petition for Writ of Habeas Corpus," and that "you have one year from the time you exhausted state remedies to file a Federal Petition for Writ of Habeas Corpus." (Docket No. 68-2, Exhibit A, p. 3.) This information is misleading because it does not account for the running of the federal statute of limitations when nothing is pending in state court, regardless whether all state court remedies have yet been exhausted.

12.     Five months after he received these packets, in August 2002 Petitioner requested three legal books from the resource center, two of which pertained directly to federal civil procedure and rules. (State's Exhibit 1009.) A paralegal hand-delivered Sherpard's Rights of Prisoners and the Federal Civil Judicial Procedure and Rules (FCJPR), the latter of which contains a complete copy of the federal habeas statutes. (State's Exhibits 1009 & 1010, EH Tr., pp. 105-07.) Because Petitioner was not present at the time, these books were left in his cell. (EH Tr., p. 105.)

13.     In February 2003, the Idaho Court of Appeals affirmed the district court's dismissal of the second application for post-conviction relief. The Idaho Supreme Court declined to review the case and issued the remittitur on April 3, 2003. (State's Lodgings

**MEMORANDUM DECISION AND ORDER - 6**

F-15, F-19.)

14.    On April 8, 2003, Petitioner filed yet another pleading in state district court, which he labeled as a "Motion for Correction of Illegal Sentence" under Idaho Criminal Rule 35. (State's Lodging G-1, p. 6.) He accompanied the new filing with motions for discovery and for the preparation of transcripts. The state district court dismissed the new pleading and accompanying motions as "frivolous" attempts to relitigate matters that should have been raised and argued in previous actions. (State's Lodging G-1, p. 19.) The district court also denied a motion for leave to file yet another post-conviction petition. (State's Lodging I-1, pp. 22-23.) The appeals from these orders were consolidated into one appellate proceeding. (State's Lodging J-1.)

15.    While the consolidated appeal was pending, Petitioner sent a request to the prison resource center for another federal habeas corpus self-help packet, which paralegal Jeffrey Eastman routed to him on August 18, 2003. (State's Exhibit 1025; EH Tr., p. 120.) This packet had been revised to contain the correct information regarding AEDPA's statute of limitations. (EH Tr., pp. 123; State's Exhibit 1022, pp. 2-3.)

16.    This Court specifically finds that Petitioner received the August 2003 self-help packet. Petitioner's testimony to the contrary is not credible, given that he also claimed that he did not receive a packet in response to his March 2002 request, which he has now conceded is untrue, and in light of his long and documented history of interaction with the paralegals establishing that he was the type of inmate who would have complained had he not received material that he had requested, and yet he did not

**MEMORANDUM DECISION AND ORDER - 7**

complain in this particular instance. (EH Tr., pp. 84, 108, 121.)

17.     On October 5, 2004, the Idaho Court of Appeals affirmed the district court's dismissal of Petitioner's latest state collateral attack, concluding, in relevant part, that Petitioner's Rule 35 "Motion for Correction of Illegal Sentence" was untimely and that the district court therefore lacked jurisdiction to consider it. (State's Lodging H-20.) The Idaho Supreme Court denied review and issued a remittitur on December 28, 2004. (State's Lodging J-16.)

18.     Petitioner filed his federal habeas petition on February 9, 2005.

## ANALYSIS

A.     <u>Legal Standards</u>

The one-year statute of limitations for filing a federal habeas petition generally begins to run from the date on which the judgment of conviction became final in state court, either upon completion of a direct appeal or after the time for seeking an appeal has expired. 28 U.S.C. § 2244(d)(1)(A). A later starting date may occur if the state has created an "impediment" to filing a federal petition, in violation of the Constitution or laws of the United States, and the petitioner was prevented from filing because of such state action. 28 U.S.C. § 2244(d)(1)(B). In that circumstance, the petitioner has one year from the date that the state-created impediment was removed. *Id.*

The statute also provides tolling of the limitations period for all of "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. §

**MEMORANDUM DECISION AND ORDER - 8**

2244(d)(2).  This is known as "statutory tolling."

The limitations period also may be tolled for fairness reasons when extraordinary circumstances prevented the petitioner from filing on time ("equitable tolling").  *See, e.g., Shannon v. Newland*, 410 F.3d 1083, 1089-90 (9th Cir. 2005).  A litigant seeking equitable tolling bears the burden of establishing (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.  *Pace v. DeGuglielmo*, 544 U.S. 408, 418 (2005).

    B.    Discussion

Because Petitioner did not file a direct appeal from his judgment of conviction, the limitations period started to run on October 21, 1996, the date on which the time to appeal expired.  The period was then statutorily tolled under 28 U.S.C. § 2244(d)(2) while Petitioner's first Rule 35 motion was pending between December 12, 1996, and April 2, 1997.  The clock ran from April 3 to July 17 of that year, when Petitioner submitted his initial application for post-conviction relief, and the total untolled time that had expired to that point was 157 days.  The limitations period was statutorily tolled again during the pendency of the initial post-conviction action, until the Idaho Supreme Court issued its remittitur on March 29, 2001.  Petitioner now concedes that unless a state-created impediment stood in his way, or he can establish a reason for equitable tolling, the federal limitations period would have expired later that same year.[5]  (Docket No. 43, pp. 1-2;

---

[5] Notably, Petitioner does not claim that his second application for post-conviction relief, filed in July 2001, statutorily tolled the limitations period, presumably because it was not

**MEMORANDUM DECISION AND ORDER - 9**

Docket No. 73, pp. 3-4.)

Petitioner initially claimed that he was entitled to equitable tolling, in part, because of his alleged mental disability and because of his post-conviction attorney's failure to advocate on his behalf. (Docket No. 32, pp. 1-2.) He has not supported these allegations with any evidence despite having been given an opportunity to do so with the assistance of counsel. *Cf. Laws v. Lamarque*, 351 F.3d, 919, 922-23 (9th Cir. 2003) (claim of mental incompetency was supported by medical records and affidavits). Moreover, attorney ineffectiveness during post-conviction matters will not provide a basis for equitable tolling, absent particularly egregious misconduct that does not exist here. *Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003). As a result, the Court finds that Petitioner has not carried his burden to show equitable tolling on these grounds. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

Instead, Petitioner continues to claim that employees of the Respondent–the prison paralagels–affirmatively misled him about AEDPA's statute of limitations. (Docket No. 32, pp. 3-4; Docket No. 43-3, p. 2 ("Bleau Affidavit".) At the recent evidentiary hearing, Petitioner testified that on December 31, 1998, he was verbally informed in a meeting with a paralegal that he could not receive any federal legal material until after he had fully exhausted his state court remedies. (EH Tr. p. 12.) He has also claimed that no later than 2000–while his initial state court post-conviction action was still pending on appeal–he

---

"properly filed" under 28 U.S.C. § 2244(d)(2). *See Pace v. DeGuglielmo*, 544 U.S. 408, 418 (2005).

**MEMORANDUM DECISION AND ORDER - 10**

asked three different paralegals to provide him with material related to filing a federal habeas petition. (Bleau Affidavit, ¶ 11.) Each paralegal supposedly informed him that he could not file a federal petition until after he had exhausted his remedies in state court, and, because he had not yet done so, they refused to give him any federal forms. (Bleau Affidavit, ¶¶ 12-14.)

      Petitioner is correct that an affirmative misrepresentation regarding the relevant law by an agent of the State, coupled with the State's failure to provide prison inmates with access to AEDPA material, would likely be a state-created impediment to filing under 28 U.S.C. § 2244(b)(1)(B) or an extraordinary circumstance that would justify equitable tolling. *See Whalem/Hunt v. Early*, 233 F.3d 1146, 1147-48 (9th Cir. 2000). But this Court has already found as a factual matter that Petitioner actually received the correct AEDPA information no later than August 2003 when paralegal Jeffrey Eastman forwarded the revised federal habeas self-help packet to him. (EH Tr. pp. 120-21; State's Exhibit 1022, pp. 2-3.) Petitioner's testimony that he did not receive this packet is not credible for the reasons given in the Court's Findings of Fact. Therefore, even if a barrier to filing a federal petition existed at some point in this case, a question that this Court need not decide, that barrier was removed, at the latest, by mid-2003.[6] Under the most generous theory, the statute of limitations would have expired in 2004, yet Petitioner

---

    [6] In addition to the corrected self-help packet, Petitioner had also previously received a copy of the Federal Civil Judicial Procedure and Rules handbook, which contains the relevant AEDPA statutory provisions, including the statute of limitations.

**MEMORANDUM DECISION AND ORDER - 11**

waited to file until February 2005.  *See* 28 U.S.C. § 2244(d)(1)(B) (deadline is one year after the removal of a state-created impediment).

Apparently recognizing this problem, Petitioner counters that even if the barrier had been lifted by mid-2003, he is still entitled to a re-initiation of *statutory* tolling while his Motion for Correction of Illegal Sentence worked its way through the state courts.  This argument is foreclosed by *Pace v. DeGuglielmo*, 544 U.S. 408, 418 (2005).

In *Pace*, the United States Supreme Court held that a state post-conviction action that has been dismissed as untimely under state law was never "properly filed," a necessary prerequisite for statutory tolling under 28 U.S.C. § 2244(d)(2).  In the present case, the Idaho Court of Appeals concluded that although Petitioner had labeled his motion as one seeking the "correction of illegal sentence," he was really challenging the manner in which the sentence was imposed.  (State's Lodging H-20, p. 3.)  Because such a motion must be filed within 120 days of judgment, the court concluded that Petitioner's motion was untimely and that the lower court had no jurisdiction to consider it.  (State's Lodging H-20, pp. 3-4.)  The Idaho Supreme Court declined to review the case, effectively endorsing this view.  Accordingly, under *Pace*, this collateral action was never properly filed, and none of the time that it was pending qualifies for tolling under 28 U.S.C. § 2244(d)(2).

Similarly, Petitioner is not entitled to equitable tolling during that same time frame.  After he had access to the correct AEDPA material, he continued to follow his chosen path of futile and piece-meal litigation in the state courts, exhibiting a lack of

**MEMORANDUM DECISION AND ORDER - 12**

diligence in getting to federal court despite the obvious probability that a Rule 35 motion challenging the manner in which a sentence was imposed seven years earlier would be deemed untimely.  *See Pace*, 544 U.S. at 416, 418.

For all of these reasons, the Petition in this case shall be dismissed.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Petitioner's Motion to Suspend Briefing Schedule (Docket No. 67-1) is deemed MOOT, and Petitioner's Motion to Reopen Evidentiary Hearing (Docket No. 67-2) is DENIED in part GRANTED in part, for the reasons given herein.  The record shall be expanded to include the entire self-help packet, revised 05/01/00, contained in Petitioner's Exhibit A attached to Affidavit of Dennis Benjamin (Docket No. 68).

IT IS FURTHER ORDERED that the Petition for Writ of Habeas Corpus (Docket No. 3) shall be DISMISSED with prejudice.



DATED: **August 14, 2007**

Honorable Mikel H. Williams
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 13**